**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALEX HECKLER, Individually And On Behalf Of All Others Similarly Situated,** | |
| | **No.________________** |
| **Plaintiff,** | |
| | **COMPLAINT- CLASS ACTION** |
| **v.** | |
| **BMW OF NORTH AMERICA, LLC,** | **Jury Trial Demanded** |
| **Defendant.** | |

Plaintiff Alex Heckler ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, brings this Class Action Complaint against Defendant BMW of North America, LLC ("BMW NA" or "Defendant"), and alleges as follows based upon personal knowledge as to Plaintiff's own acts and experiences, and information and belief as to all other matters.

## NATURE OF THE ACTION

1. This is a class action brought by Plaintiff, who purchased a 2020 BMW X5 M50i xDrive car in Pennsylvania. This Class Action Complaint is brought by Plaintiff on behalf of himself and all owners or lessees of Defendant BMW NA vehicles designated as the G05, G06, or G07 chassis codes up to and including the 2025 model year ("Class Vehicles") that are factory equipped with BMW's intelligent All-Wheel-Drive system known as "xDrive" and who either are residents of Pennsylvania or leased or purchased their Class Vehicle in Pennsylvania. The Class Vehicles all left the factory floor with a defective front differential that, as a result of its defective nature, fails prematurely and requires replacement at a cost of several thousands of dollars. Though BMW NA knew about the defective nature of the front differential found in the

Class Vehicles, it never made any disclosure of the defect to Plaintiff, the putative Class Members, or the public at large.

2. Defendant knew of the front differential defect but concealed it from Plaintiff and Class Members at the time of sale and thereafter, violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. ("UTPCPL").

3. Because Defendant realized gains and benefits from the sale of the Class Vehicles while these Class Vehicles contained a defective front differential that was undisclosed by Defendant, it would be inequitable and unjustly enrich Defendant if it were allowed to fully retain these benefits.

4. As a result of Defendant's unfair and deceptive conduct, Plaintiff and the Class Members suffered economic injury, including diminution of their vehicles' value and thousands of dollars in out-of-pocket repair costs. Plaintiff, therefore, seeks monetary relief exceeding $5 million as well as injunctive relief as redress to the Class Members for the economic injury they sustained as a direct, proximate, and foreseeable result of BMW NA's conduct.

## PARTIES

5. Plaintiff Alex Heckler is a citizen and resident of Monmouth County in the State of New Jersey. On or about March 5, 2021, Plaintiff purchased a 2020 BMW X5 M50i xDrive vehicle, from Manheim Imports, a car dealership in Manheim, Pennsylvania within this judicial district. At the time of this purchase, the vehicle had approximately 10,000 miles. Plaintiff was provided no disclosure at the time of his purchase from either the selling dealership or Defendant that the vehicle was equipped with a defective front differential that made it unduly prone to exhibiting premature failure. Before making his purchase, Plaintiff researched particulars about the 2020 BMW X5 M50i xDrive. Plaintiff still owns the 2020 BMW X5 M50i X-Drive Class Vehicle and is its sole registered owner.

6. Defendant BMW of North America, LLC is a Delaware limited liability company with its principal place of business in Woodcliff Lake, Bergen County, New Jersey. Defendant is a citizen of Delaware and New Jersey and does business throughout Pennsylvania, including in this judicial district.

## JURISDICTION AND VENUE

7. This Court has original subject-matter jurisdiction over this action under diversity of citizenship per the federal Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. More than one-third of Class Members are citizens of Pennsylvania; Defendant, is a citizen of New Jersey and Delaware, but not a citizen of Pennsylvania.

8. This Court has personal jurisdiction over Defendant because it conducts substantial business in Pennsylvania, including marketing, warranting, distributing, and selling the defective Class Vehicles and BMW vehicles, in general, in this judicial district.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred here. Plaintiff purchased his vehicle in this judicial district and a substantial portion of the proposed Class resides here.

## FACTUAL ALLEGATIONS

### The Class Vehicles:

10. Defendant BMW NA is the importer, distributor, warrantor, and marketer in the United States of BMW-branded vehicles, including the Class Vehicles.

11. The BMW Class Vehicles at issue are model years are designated by chassis code G05, G06, and G07 that are factory equipped with BMW's intelligent All-Wheel-Drive system known as xDrive. The BMW G05 is the internal chassis code for the fourth-generation BMW X5 (model year 2019–present), a mid-size luxury SUV. The BMW G06 is the internal codename

for the third-generation BMW X6, a mid-size luxury "Sports Activity Coupe" (SAC) manufactured from model year 2019 to the present (2026) that shares many interior and other components with the BMW G05 chassis code vehicles. The BMW G07 is the internal chassis code for the first-generation BMW X7, a full-size luxury SUV manufactured by BMW from model year 2018 to the present.

**The Front Differential And Defendants' Representation Of A "Lifetime" Differential Fluid:**

12. The BMW Class Vehicles designated by chassis codes G05, G06, and G07 with xDrive all share the identical or nearly identical front differential, and the front differential is interchangeable between these BMW Class Vehicles.

13. In the Class Vehicles, the front differential works with the xDrive all-wheel-drive system to manage torque between the front wheels, allowing them to spin at different speeds for smoother cornering while ensuring traction. It acts as a critical link in the powertrain, distributing power to the front axle, particularly under high-performance, heavy-load, or off-road conditions.

14. Because the Class Vehicles' front differential allows for independent rotational speeds of the front left and right wheels, it is a critical component in increasing steering control.

15. The Class Vehicles' front differential consists of a cast-metal housing containing a ring and pinion gear set, carrier assembly, bearings, and seals, typically in a 3.15 or 3.385 ratio.

16. Given these internally moving components, the Class Vehicles' front differential assembly, like the front differential assemblies in all cars, requires fluid for lubrication, friction reduction, and heat dissipation. BMW equips the front differential of the Class Vehicles with its own BMW 75W85 (G2) differential and front axle fluid oil.

17. Up until the early 2010's BMW NA had represented that its vehicles' front differentials required fluid replacement at designated mileage intervals. Following that,

however, as of the mid-2010's BMW NA adopted an entirely different new service advisory under which it claimed that its front differentials for the xDrive-equipped vehicles would no longer require differential fluid changes, as that fluid would be deemed by BMW to be a "lifetime" fluid in light of what BMW NA claimed was the current design of its front differential components.

18. Defendant's representation as to the purported "lifetime" nature of the front differential fluid of the Class Vehicles and there being no need to have that fluid replaced is evidenced and memorialized in Defendant's official Maintenance publication, a copy of which is attached hereto as Exhibit 1. That 26-page detailed maintenance schedule for BMW vehicles contains detailed intervals at which various fluids (e.g., engine oil, rear axle differential oil, coolant) are to be replaced and other components are to be replaced. Tellingly, though Defendant's Maintenance publication makes representations as the interval at which the real axle differential oil is to be replaced, it makes no provision for replacing the front differential oil.

**The Defective Nature Of The Class Vehicles' Front Differential With The Purported "Lifetime" Fluid:**

19. Upon information and belief, BMW NA adopted and emphasized this changed policy that designated the front differential fluid as a "lifetime" fluid requiring no replacement as a part of a marketing strategy that was aimed to tout lower service costs and less frequent and onerous service intervals for the Class Vehicles. In truth and in fact, however, BMW NA knew that failing to change the front differential fluid of the Class Vehicles for the "lifetime" of the car would predictably lead to failure of the front differential as the fluid's ability to reduce friction, lubricate the front differential components adequately, and dissipate heat sufficiently would degrade over time and mileage use of the Class Vehicles.

20. Despite this knowledge, BMW NA never disclosed to Plaintiff, putative Class Members, or the public at large that the front differential of the Class Vehicles was defectively designed in that it could not properly and consistently operate as designed if the differential fluid was not changed at an appropriate service interval (usually in the tens of thousands of miles, depending on vehicle use). Also, despite this knowledge, BMW NA never informed Plaintiff, Class Members, or the public at large that Class Vehicle owners should, in fact, have their front differential fluid drained and changed at a regular service interval to avoid failure of the front differential. Instead, BMW NA continued to adhere to its marketing party line that the front differential fluid was designed by it to be a "lifetime" fluid that required no changes.

21. Because the design of the Class Vehicles' front differential could not live up to Defendants' representations and assurances its fluid would last a "lifetime" without change, the front differentials in Class Vehicles have failed and continue to fail prematurely and at unacceptably high rates. When the front differential fails, replacement is costly, to the tune of several thousands of dollars, and labor-intensive.

22. Though BMW NA has witnessed firsthand this unusually high frequency of front differential failure rates in the Class Vehicles, it has done nothing to effectively remedy this defect. The reality is that because the front differential failure generally occurs after 50,000 miles or after four years, BMW NA's New Vehicle Limited Warranty no longer covers this failure. Consumers, like Plaintiff, are instead forced to pay thousands of dollars to BMW NA and its dealers for a replacement front differential, which works to the financial benefit of BMW NA and its authorized dealerships but very much to the financial detriment of Class Vehicle owners like Plaintiff and the Class Members.

**PLAINTIFF'S FRONT DIFFERENTIAL FAILURE AND ECONOMIC HARM**

23. On or about November 2024 when his car had logged approximately 47,000 miles, Plaintiff noticed noises coming from the front of his 2020 BMW X5 M50i xDrive. He initially brought the vehicle to an independent mechanic, who diagnosed the noise as coming from the front differential.

24. After consultation with that mechanic, Plaintiff brought the vehicle to Circle Motorsport, Inc., a BMW NA factory-authorized dealership. There, the BMW dealership's mechanics road tested Plaintiff's car, confirmed the noise emanating from the front and, after further diagnosis and testing, determined that Plaintiff's front differential, like that of thousands of Class Vehicles, had failed.

25. That diagnosis was confirmed when the dealership's mechanics took apart and removed the front differential and documented that "Differential has internal damage (metal shavings) and must be replaced." Tellingly, the service record did not document any loss of fluid or low level of differential fluid within the front differential assembly, meaning that the front differential failure did not occur because of a lack of fluid. Instead, the differential fluid present in the differential assembly—the same fluid BMW NA designated as being a "lifetime" fluid—had been unable to provide the required friction reduction and lubrication to prevent the internal failure and metal shavings from occurring within the front differential assembly.

26. Though Plaintiff's car had logged only some 47,000 BMW NA refused to honor any front differential replacement or repair under warranty because it had been slightly over 4 years since Plaintiff's vehicle's original in-service date, thereby exceeding the temporal limitation of that warranty.

27. Left with no choice, Plaintiff was forced to pay out of pocket entirely to have the front differential of his 47,000 mile vehicle replaced at a cost of $6,199.01. Upon conversations with the mechanics, Plaintiff was advised that this same front differential premature failure was a common occurrence among Class Vehicles.

**BMW NA'S KNOWLEDGE OF THE DEFECTIVE FRONT DIFFERENTIAL AND ITS PARTIAL CHANGE OF TUNE**

28. At the time he purchased his Class Vehicle, Plaintiff had no knowledge that the front differentials of his and all Class Vehicles were defective. BMW NA never made any such disclosure to Plaintiff or any other member of the public. But while Plaintiff and the putative Class Members lacked such knowledge, BMW NA was aware of the defective nature of the Class Vehicles' front differential and them being unduly prone to prematurely fail and require replacement.

29. Defendant knew of this defect not only due to the extensive testing carried out by its German parent company, Bayerische Motoren Werke AG (BMW Group), of which Defendant is an agent in the United States for purposes of compliance with the Federal Motor Vehicles Safety Act and reports and investigations by the National Highway Transportation Safety Administration ("NHTSA"). By the time Plaintiff's car was first sold, Defendant was also the recipient of voluminous customer complaints from owners and lessees of the Class Vehicles whose front differentials had failed prematurely.

30. Egregiously, while Defendant marketed the front differential of the Class Vehicle as being equipped with a "lifetime" fluid that would require no drainage or replacement, Defendant knew this was not so because of the very design provision it had incorporated into the Class Vehicles without disclosing the same to Plaintiff or putative Class Members. Specifically,

while Defendant touted the front differential as not needing a fluid replacement, it placed drain and fill plugs on the front differential assembly in locations hidden from view.

31. Of course, if the front differential of the Class Vehicle really required no fluid change for the lifetime of the car, there would be no basis to equip the front differential with either drain or fill plugs. But, in the G05, G06, G07 chassis code Class Vehicles, Defendant and its parent company provided a drain plug that is concealed from view, and that requires the removal of the under-engine cover and aluminum stiffening plate to visualize and access. The G05 and G06 chassis code Class Vehicles also were designed with a fill plug (again, an oddity for a differential that is represented to never require a fluid replacement) accessible only through the car's wheel well and therefore not visible otherwise. Similarly, for the G07 chassis code Class Vehicles, the front differential also was provided with a fill plug that is not visible without removal of the under-body skid plates.

32. BMW's inclusion of drain and fill plugs for the front differential units of all Class Vehicles directly undermines and contradicts Defendant's representation that the front differential housed a "lifetime" fluid that required no drainage or replacement. It further supports Plaintiff's claim that, contrary to Defendant's representation and marketing, the front differential required fluid changes to properly operate. Worse yet, by knowing that the drain and fill plugs were all concealed from view absent some disassembly of the Class Vehicles' components, Defendant knew that consumers like Plaintiff and Class Members would not have any reason to question the Defendant's "lifetime" fluid representations about the Class Vehicles' front differential.

**<u>THE SAFETY RISKS ATTENDING A FAILING FRONT DIFFERENTIAL IMPOSED ON DEFENDANT A DUTY TO DISCLOSE</u>**

33. Given the front differential's link between the Class Vehicles' powertrains and front wheels, failure of the front differential poses significant safety risks and issues. A failing front differential, can lock up the front wheels unexpectedly. A failing front differential also can adversely impact steering, making it difficult to steer and handle the vehicle, especially during turning maneuvers. Worse yet, if the failure of the front differential is brought about by seized bearings, as may occur if the differential fluid is not providing appropriate lubrication to the internal moving parts, the entire drivetrain may lock up, causing total loss of control of the vehicle.

34. Given these very serious and real safety risks brought about by a failing front differential, Defendant had a legal duty to disclose the defective nature of the front differential causing it to be unduly prone to fail prematurely and the resulting consequences of it failing. Because the defect was present from the time of manufacture of the Class Vehicles and because the defect raises a safety risk and concern, Defendant cannot rely on the durational or mileage limits of its Limited Warranty to avoid its disclosure obligations about the defect.

**<u>BMW CHANGES ITS "LIFETIME" DIFFERENTIAL FLUID POLICY IN A TACIT ADMISSON OF THE DEFECT</u>**

35. At the time of the sale of the Class Vehicles, Defendant's universal party-line was that the front differential in the Class Vehicles would not require any fluid replacement at any mileage or temporal service interval; its front differential fluid was a "lifetime" fluid.

36. This past year, however, Defendant finally changed its representation, thereby tacitly admitting that its front differential units are incapable of proper operation without fluid replacement. Starting with the post-2025 model year, Defendant has updated its disclosure and

representations. It now maintains that for, post-2025 model year M-Series cars, the front differential fluid should be replaced at approximately 5 years or 50,000 miles.

37. Plaintiff's Class Vehicle is an M-Series car. Had Defendant issued its current representation to the effect that front differential fluid should be replaced at 5 years or 50,000 miles, Plaintiff's Class Vehicle's differential would not have failed, as his failure occurred after the vehicle had been in service more than five years.

38. Defendant's new recommendation that, for the first time, referenced the need to change the front differential oil is evidenced in Defendant's 2026 Maintenance publication, a copy of which is attached hereto as Exhibit 2. Unlike the previous Maintenance publication for earlier model years (*see, e.g.,* Exhibit 1 hereto), the 2026 Maintenance publication makes the following explicit reference to changing the front differential oil—a representation notably absent from previous years Maintenance publications:

**WHAT IS COVERED**

The BMW Ultimate Care Scheduled Maintenance Program covers the following factory-recommended maintenance services when they are identified as needing to be performed by the BMW Maintenance System:

▷ Engine oil (including the oil filter)
▷ Brake fluid (Replacement)
▷ Vehicle check (Inspection)
▷ 1200 Mile running-in service (Applicable BMW M vehicles only: Break-in service)

And, in conjunction with one or more of the items listed above, the:

▷ Standard scope (Procedure)

Additionally, the following "combine with Engine oil"** maintenance service tasks are also covered when they qualify to be performed:

▷ Cabin microfilter(s)
▷ Remote control key battery
▷ Engine air filter
▷ Spark plugs
▷ Front differential and/or Final drive oil (Applicable M vehicles only)

**As determined by the vehicle's maintenance system "Engine oil" service counter "number."

If a covered maintenance service task's procedure specifies the inspection of components with a performable adjustment, when required and in conjunction with performing this maintenance service, these adjustments are also covered.

For more information on your vehicle's maintenance service requirements, procedures, intervals, please refer to the Maintenance Service Summary section beginning on page 10.

Ex. 2 hereto, at p.23.

39. Defendant has never explained why its new advisory for front differential fluid to be replaced only to post-2025 model years when the front differential in these post-2025 model year is the same or nearly the same as the front differential in the G05, G06, and G07 chassis code Class Vehicles (all of which encompass post-2025 model year cars).

**THE DAMAGES AND ECONOMIC HARM PROXIMATELY CAUSED BY DEFENDANT'S CONDUCT**

40. Plaintiff and all putative Class Members sustained economic harm directly, foreseeably, and proximately caused by Defendant's conduct as alleged herein.

41. Plaintiff and all Class Members suffered economic harm by being left with a vehicle of diminished value directly attributable to the defective front differential that Defendant failed to disclose. A vehicle whose front differential is defective and unduly prone to fail is worth less in the marketplace. Had Defendant disclosed the defect plaguing the front differential of the Class Vehicles, Plaintiff and the Class Members either would not have purchased their Class Vehicles or would have paid less for their purchase or lease.

42. The diminution in value caused by Defendant's conduct and defective front differential is also evidenced by the fact that there is a cost undisclosed by Defendant to be borne by the consumer in order to avoid front differential failure in the Class Vehicles. Specifically, if Defendant had disclosed that the Class Vehicles cannot perform adequately unless the front differential fluid is replaced at discrete service intervals (which is contrary to Defendant's omission of any need to replace the front differential fluid), than any rational consumer would factor in the necessary cost of fluid replacement (including parts and labor) in making their purchasing or leasing transaction consideration.

43. Further, that subset of the Class (*i.e.,* subclass) of Class Members who, like Plaintiff, paid for a front differential replacement to their Class Vehicles, also sustained further economic harm in being forced to pay for the costs of that replacement and repair.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action under Federal Rule of Civil Procedure 23(b)(3) on behalf of a Class defined as:

> All owners and lessees of BMW G05, G06, or G07 chassis-designated vehicles equipped with xDrive (as itemized in Paragraph 11 *supra*) up to and including model year 2025 who either reside in Pennsylvania or who bought or leased the following vehicles in Pennsylvania, and who made their purchase or lease of their Class Vehicle within the Class Periods. Excluded from this Class definition are Defendant, its employees and officers, as well as any judicial officers presiding over this case and their staff.

45. Plaintiff reserves the right to amend this Class definition as case developments warrant.

46. The Class Period for Count I (UTPCPL) runs from the date six years before the filing of this Class Action Complaint until the date of the filing of Plaintiff's motion for class certification. The Class Period for Coun II (Unjust Enrichment) runs from the date four years before the filing of this Class Action Complaint until the date of the filing of Plaintiff's motion for class certification. Plaintiff reserves the right to amend these Class Periods as case developments warrant.

47. The Class is so numerous that joinder is impracticable. Thousands of Class Vehicles were sold in Pennsylvania during the Class Period.

48. Common questions of law and fact predominate, including:

a. Whether the Class Vehicles contain a Front Differential Defect;

b. Whether Defendant knew of the Defect and failed to disclose it;

c. Whether Defendant's omissions violate the UTPCPL; and

d. Whether Plaintiff and Class members are entitled to damages and, if so, the proper measure of classwide damages.

49. Plaintiff's claims are typical of the Class. Plaintiff and Class Members sustained the same injury from the same conduct. Specifically, Plaintiff, like all putative Class Members, alleges he was economically injured as a result of Defendant failing to disclose that the front differentials in the Class Vehicles were defective and thereby unduly prone to fail prematurely.

50. Plaintiff and his counsel will fairly and adequately represent the Class. Plaintiff has no interests adverse to the Class, and counsel are highly experienced in class litigation.

51. A class action is superior to other methods because individual actions are costly and inefficient, and Defendant's conduct is uniform. Absent classwide treatment, the costs required to prosecute any individual consumer's action would dwarf any available individual recovery.

52. A class action is manageable. This Class Action Complaint raises a single common claim under the laws of a single state (Pennsylvania) arising from allegedly uniform conduct, such that the proof and law required to adjudicate the claims classwide is the same.

## COUNT I

## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

**(73 P.S. § 201-1 et seq.)**

**(On Behalf of Plaintiff and the Class)**

53. Plaintiff re-alleges paragraphs 1-52 and incorporates them by reference.

54. The UTPCPL declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3(a).

55. Defendant is a “person” engaged in “trade” and “commerce” under 73 P.S. § 201-2(3), (4).

56. Plaintiff and Class members are “persons” under 73 P.S. § 201-2(2).

57. Defendant violated 73 P.S. § 201-2(4)(v), (vii), (ix) and the catch-all provision of § 201-2(4)(xxi) by failing to disclose the Front Differential Defect, a material fact that would have influenced Plaintiff’s and Class members’ purchasing decisions.

58. Defendant’s omissions were knowing and intentional to induce sales of defective vehicles and replacement front differential units.

59. Plaintiff and Class members justifiably relied on Defendant’s omissions, suffered an ascertainable loss (diminution of value and repair costs), and are entitled to recover actual damages, treble damages, attorneys’ fees, and costs under 73 P.S. § 201-9.2(a).

**COUNT II**

**UNJUST ENRICHMENT**

**(On Behalf of Plaintiff and the Class)**

60. Plaintiff re-alleges paragraphs 1-52 and incorporates them by reference.

61. In purchasing the Class Vehicles, Plaintiff and the Class Members conveyed a benefit on Defendant. Not only did Defendant realize a benefit from the sale of its vehicles that either would not have been sold or would not have commanded the same pricing if Defendant had disclosed the defect plaguing the Class Vehicles’ front differentials, but the sale of Class Vehicles conveyed a further benefit on Defendant in that Class Members were then required to purchase Defendant’s parts or hire Defendant’s authorized dealerships to service their Class Vehicles.

62. Further, that subset (i.e., subclass) of the Class that, like Plaintiff, actually paid to have their defective front differential replaced, further conveyed a benefit on Defendant by purchasing this expensive spare replacement part from Defendant.

63. The Defendant appreciated these benefits as evidenced by Defendant's repeated touting about the popularity of its vehicles among the public.

64. Given that Defendant sold the Class Vehicles with a defective front differential that Defendant failed to disclose, it would be unfair and inequitable for Defendant to be permitted to retain the full benefits conveyed to it by Plaintiff and the Class Members.

65. Plaintiff and the Class Members are therefore entitled to and do seek an order of restitution to return to them the ill-gotten benefits and gains that Defendant realized from Plaintiff's and the Class Members' purchase or lease of the Class Vehicles.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, demands a jury trial and prays for judgment as follows:

A. Certifying the Class and appointing Plaintiff and undersigned counsel as class representative and counsel, respectively;

B. Mandating Defendant to set up and fund a common fund from which the actual damages for diminution in vehicle value and repair/replacement costs of Plaintiff and the Class Members may be paid;

C. Treble damages under the UTPCPL;

D. Injunctive relief compelling Defendant to disclose the Defect and repair Class Vehicles;

E. Restitution to Plaintiff and the Class Members;

E. Attorneys' fees, costs, and expenses;

F. Pre- and post-judgment interest; and

G. Such other relief as the Court deems just and proper.

Plaintiff demands a trial by jury on all counts so triable.

Respectfully submitted,

**SIDKOFF, PINCUS & GREEN, P.C.**

By: /s/ *Gary Green*
GARY GREEN, ESQUIRE
LARRY M. KELLER, ESQUIRE
1101 Market Street
Suite 2700
Philadelphia, PA 19111
Office: (215) 574-0600
Fax: (215) 574-0310
gg@greatlawyers.com
lmk@sidkoffpincusgreen.com

Dated: August 31, 2026

*Attorneys for Plaintiff Alex Heckler*

Additional Plaintiff's Counsel:

Roy A. Katriel (*pro hac vice* motion forthcoming)
**THE KATRIEL LAW FIRM, P.C.**
1228 Camino del Mar
Del Mar, CA 92014
Telephone: (619) 363-3333
Fax: (866) 832-5852
e-mail: rak@katriellaw.com

Ralph B. Kalfayan (*pro hac vice* motion forthcoming)
ralph@rbk-law.com
Ian D. Krupar (*pro hac vice* motion forthcoming)
ian@rbk-law.com
**THE KALFAYAN LAW FIRM, APC**
1228 Camino del Mar
Del Mar, CA 92014
Telephone: (619) 232-0331
Fax: (619) 232-4019